McCARTY, Appellant, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, March 29, 1904.

1. **CARRIERS OF PASSENGERS: Passenger.** One may become a passenger on a street car in attempting to get on a car at a place where people are expected to take passage, though his attempt fails; but a man does not become a passenger by making such an attempt where he is not expected, when the motorman is ignorant of his presence.

2. ———: ———: **Negligence of Carrier.** Where one attempted to board a car when it was stopped, but not for the purpose of receiving passengers, nor at a place where passengers are usually received, the carmen in charge of the car were not guilty of negligence in suddenly starting the car so as to throw him off, unless they knew he was attempting to get aboard; they were not bound to watch for passengers at that place.

3. ———: **Negligence of Carrier: Hand Rail.** Where plaintiff, in an action against a street railway company for damages received while attempting to board one of its cars, proved that the handrail, which he clutched to aid him in getting safely on, gave way and he was thrown off and injured, he made out a prima facie case of negligence on the part of the defendant which proximately caused his injury.

4. ———: ——— **Usual Place.** And this is true though the plaintiff was attempting to board the car at a place where passengers are not usually received.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

REVERSED AND REMANDED.

*Carter & Sager* for appellant.

(1) It was error for the court to instruct that defendant owed plaintiff no duty if the place at which plaintiff boarded the car was not a usual and customary place for stopping to receive passengers, unless defendant's conductor saw plaintiff attempting to board the car while it was standing still and so seeing plaintiff negligently started the car before plaintiff was safely on the car, etc. Ashworth v. Railway, 59 L. R. A. 592; Williams v. Kansas City, etc., 96 Mo. 275; Meriwether v. K. C. Cable Co., 45 Mo. App. 528; Schepers v. Railroad, 126 Mo. 673. (2) The fact that the stop was made for a purpose other than the receipt or discharge of passengers does not alter the liability of the carrier toward one who attempts to become a passenger when it is customary for the cars to take on passengers at such points. (3) The court erred in instructing the

jury that there was no evidence of negligence on the part of defendant on account of the handrail giving away, and in telling them that they should under no circumstances find for plaintiff on that ground. (4) This is not the law. The doctrine of *res ipsa loquitur* applies here. The fact that the handle gave way is evidence of defendant's negligence which puts the burden on it to show that it used due care and diligence to provide a safe handle and keep it in safe condition. Hite v. Railway, 130 Mo. 132; Sharp v. Kansas City Cable Co., 114 Mo. 103; Lemon v. Chanslor, 68 Mo. 340; Furnish v. Railroad, 102 Mo. 452; Clark v. Railroad, 127 Mo. 197; Hipsley v. Railroad, 88 Mo. 348; Crudy v. Railroad, 85 Mo. 79; Sawyer v. Railroad, 37 Mo. 259; 10 Central Law Journal 261.

*McKeighan & Watts* and *Wm. R. Gentry* for respondent.

GOODE, J.—This plaintiff got hurt in attempting to board one of the defendant's cars. The accident occurred on Seventh street a little south of Franklin avenue, in St. Louis, about six o'clock p. m., December 2, 1902. The car in question at that time ran from Locust to Seventh, thence north to Franklin avenue, thence west over the tracks of the St. Louis Transit Company, pending repairs to the defendant's tracks on Seventh street. There was a switch just south of Franklin avenue, but not at the crossing, and the car stopped to throw the switch so as to go around the curve in the track into Franklin avenue. Plaintiff was awaiting its arrival, anticipating that it would stop. He said it did so and that he stepped on the first step of the rear platform and had his other foot raised above the second step, when the car started, destroyed his balance, he grabbed a handrail, which gave away in his struggles to maintain his position on the step, threw him on the

street and hurt him. Other witnesses swore plaintiff attempted to board the car while it was moving.

The acts of negligence charged against the defendant are, starting the car suddenly before the plaintiff was fairly on and allowing the handrail to become loose, when, by the exercise of care, its unsafe condition could have been detected and repaired.

The answer, besides a general denial, alleges that plaintiff's own negligence in boarding the car while it was in motion caused or contributed to his injury.

An ordinance of the city of St. Louis was introduced which required street cars to stop on the far crossings of intersecting streets to receive passengers, and motormen to bring their cars to a full stop at such corners when requested or signalled by a person standing thereat and desiring to take passage.

It will be observed that the plaintiff attempted to board the car slightly south of the near crossing, instead of at the west, or far, crossing, of Seventh street and Franklin avenue. He stepped on the car when it stopped to throw the switch just south of Franklin avenue, and justified his action by testifying that he had seen others do so. Plaintiff admits, however, that the west crossing was the usual and customary place for taking passage on street cars.

There was no testimony that either the motorman or the conductor saw the plaintiff before or at the time he attempted to get aboard, or knew he desired, or was trying to become a passenger. The motorman was at his proper place on the front platform, while the conductor was at the center of the car inside, and was not shown to have been looking toward the plaintiff.

Complaint is made here of the refusal of the court to grant two instructions. One related to the handrail and will be noticed further on. The other was that, if while the plaintiff was attempting to board the car for the purpose of becoming a passenger, and while he

was in the exercise of ordinary care, he was thrown to the ground and injured through the negligence of the servants of the defendant in charge of the car in starting it before he was safely aboard, the verdict should be for him, provided said servants knew, or by ordinary care might have known, before starting the car, that he was boarding it and had not reached a place of reasonable safety. The court gave that instruction, not as asked, but with a modification that if the carmen knew the plaintiff was boarding it when they started, the defendant was liable; omitting the hypothesis of liability if they might have known that fact by ordinary care.

The defendant had a verdict and the plaintiff appealed.

The jury were instructed on the theory that the carmen owed the plaintiff no duty when starting unless they knew he was trying to board the car—that they were not bound to be on the lookout for passengers at that point, and, hence, that the jury should not be permitted to return a verdict against the defendant on a finding that its servants might have known what the plaintiff was about if they had used proper care. The theory of plaintiff's counsel is that the carmen can be convicted of negligence in starting the car while plaintiff was endeavoring to get safely aboard, if they either knew his position, or by due care, might have ascertained it. The postulate of this argument is that the carmen were bound to watch for would-be passengers when they stopped the car at the switch. If the testimony had shown it was usual to receive passengers there, the plaintiff's position would be well taken. But the only testimony on the subject was his own, and it went no further than the statement that he had previously seen men and women board cars where he did. People occasionally get on street cars anywhere along a street, when they happen to stop, or even while they are running; but proof of that fact would not establish

a custom to receive passengers anywhere and bind carmen to be always alert. If there was a usage to take passengers at the switch, the carmen would have been bound to watch and be as careful about starting there as at far-crossings, the common and appropriate localities for taking passage; for then persons would have a right to board cars and the operatives good reason to expect them to do so. Washington, etc., Railroad, v. Grant, 11 App. Cas. (D. C.) 107; McNulta v. Euch, 134 Ill. 46; West Chicago St. Ry. v. Manning, 170 Ill. 417; Id., 70 Ill. App. 239. But that people had theretofore got on cars at the switch did not make out a custom in the absence of evidence as to how many had done so and for how long. We are asked to take notice that the defendant company, and street railway companies generally, receive passengers wherever a car happens to stop. We are willing to notice as a well known fact, that companies tolerate persons getting on street cars wherever they stop, or, as said, when they are in motion; but are unwilling to notice, as of common knowledge, that the public is invited to do so. The fact is quite the other way, we think.

A person becomes a passenger on a street car by a contract, express or implied. He may become one in attempting to get on a car at a place provided for that purpose, and where people are expected to take passage, though his attempt fails. Webster v. Railway, 161 Mass. 298; Chicago, etc. Ry. Co. v. Jennings, 190 Ill. 378, 54 L. R. A. 827. But a man does not become a passenger by making such an attempt at a place where he is not expected and when the carmen are ignorant of his presence. As was said in Washington, etc., Co. v. Grant, supra: "If a person voluntarily alights from a street car in motion or when at a place or in a position *where passengers are not intended or expected to get off the car*, the passenger so getting off or on the car takes the risk of injury by the sudden starting up of the car,

and the employees who so start the car are not negligent *if they are ignorant that the passenger is so alighting from or getting on the car."*   See Nichols v. Railroad, 106 Mass. 463; Grabenstein v. Railway, 84 N. Y. Supp. 261; Mitchell v. Railroad, 51 Mich. 236.   The case differs from that of a man who, by license of a defendant, was in a place so usually occupied by persons, that the defendant was under the duty of looking out for his welfare.   As the proof stands, this company was no more bound to be on the lookout for passengers where the accident occurred, than at any other point a car may stop because of some impediment.   We conclude that the carmen were not remiss in failing to notice the position of the plaintiff before they started, and that the trial court did right in confining the jury's attention to the issue of whether they knew plaintiff was attempting to get aboard at that time.

The handrail pulled away from the car when the plaintiff clutched it to keep from falling from the step, and the inference is fair that otherwise he would have maintained his position; and if he would, the loosening of the handrail was the proximate cause of the injury. The trial court refused to charge that if the plaintiff was injured by the rail giving way, the verdict should be for him if the jury found he was exercising care; provided they found the handrail was insecure and that the fact was known to the defendant or might have been by the exercise of ordinary care.   At defendant's request the jury were told there was no evidence of negligence on the part of the defendant in reference to the handhold, and that plaintiff was, under no circumstances, entitled to recover on the ground that the handhold became unfastened.

There was no evidence that the defendant was negligent and to blame for the giving way of the handhold except the fact that its fastenings let go under the strain of plaintiff's struggle.   Plaintiff was using the handrail for its proper purpose, namely,

to assist persons in getting on and off the car.   That it
gave way while thus used we regard as sufficient evi-
dence of negligence on the part of the defendant to
shift the burden of proof to it, as the party in possession
of whatever evidence there was to exonerate it from
blame.   In the ordinary course of operating street cars
and travelling on them, such attachments do not break
loose.   They are grabbed as aids to boarding cars by
many persons every day, with perfect and merited con-
fidence in their security.   The handrail, as well as the
rest of the car, was in the control and under the manage-
ment and care of the company.   That an accident so con-
trary to common experience occurred, bespeaks care-
lessness in the party using the appliance, and makes a
prima facie case for the injured individual.   Blanton
v. Dold, 109 Mo. 64; Turner v. Hoar, 114 Mo. 335; Gal-
lagher v. Illuminating Co., 72 Mo. App. 576; Suter v.
Birchoff, 63 Mo. App. 157; Minister v. Railway, 53 Mo.
App. 276;  Hill v. Scott, 38 Mo. App. 370; Lyons v.
Rosenthal, 11 Hun 46.   In cases in which a handrail
on a freight car pulled off under the weight of a train-
man, the question of negligence was referred to the
jury, though the plaintiffs apparently proved no more.
It was ruled, expressly in some cases and impliedly in
others, that the burden was on the defendant to acquit
itself of negligence by showing the handhold had been
properly fastened and regularly inspected.   Braun v.
Railway, 53 Iowa 595; Jones v. Railway, 22 Hun 284;
Toledo, etc., Railway v. Ingraham, 77 Ill. 309; Chicago,
etc., Railway Co. v. Platt, 89 Ill. 141.   Those were ac-
tions by servants whose employers were under a legal
obligation to use care to furnish them safe appliances to
work with.   The present plaintiff was not a servant nor,
yet, a passenger; but as regards the use of the handrail
at an unusual place, his status was intermediate be-
tween that of a bare licensee and a passenger; a status
that has no distinctive legal appellation so far as we

know.   He was not exactly an invited licensee, but, perhaps, might be called appropriately a probable licensee; for he, like every one else, was expected to use the handrail as an aid to mounting to the platform and maintaining a position on it.   The duty owed by the defendant to the plaintiff is like that owed by railway companies to persons who walk on depot platforms or get on cars, not with the intention of becoming passengers, nor as mere idlers or intruders; but to assist friends who are taking passage, or on some other privileged mission. A carrier is under an obligation to that class of people to use ordinary care in keeping its platform fit for their use and in regulating the movements of its trains so as not to hurt them.   Doss v. Railway, 39 Mo. 27; Gillis v. Railway, 59 Pa. St. 129; Burbank v. Railway, 42 La. Ann. 1156; Palmer v. Railway, 111 N. Y. 488; Kelly v. Railway, 112 N. Y. 443.

The defendant in the present case was under an obligation to the plaintiff, as to the public generally, to have the handrail sound and secure, if that could be done by ordinary care.   In providing the handrail the company tacitly agreed with anyone who had occasion to use it, in a lawful attempt to take passage on the car, to be careful that it was safe.   That the tearing loose of the attachment was evidence going to prove nonperformance of the duty growing out of that implied promise, is a proposition established by the decisions we have cited  some of which are undistinguishable in their material facts, and others in principle, from the present case.   See, especially, Lyons v. Rosenthal, Gallagher v. Illuminating Co., Braun v. Railway, Jones v. Id., and Railway Co. v. Grant, supra.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.