THOMAS B. HAYS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 5, 1914.

1. CARRIERS OF PASSENGERS: Negligence: Duty Toward Alighting Passenger. When a street car stops at a regular place for letting off and taking on passengers, it is the duty of those in charge of the car to exercise due care in order to learn whether passengers are attempting to alight, and if so, not to start the car while they are in the act of alighting. The same duty rests upon those operating the car, when it stops for the purpose of letting passengers off, whether such stop is made at a regular stopping place or not. And if a stop is not made at a regular stopping place nor to let off passengers, still, if those in charge of the car know that a passenger is in the act of alighting, it is negligence to start the car while such is being done.

2. ————: ————: ————: Pleading. In a petition charging negligence in starting a car while plaintiff, a passenger, was

Hays v. Railway Co.

in the act of alighting, causing him to fall, the failure to allege either that the place was a regular stopping place for letting off passengers or that the car crew knew, or, by the exercise of due care, should have known, that plaintiff was alighting, does not render it fatally defective as a pleading, where the petition, in effect, charges that the car stopped for the purpose of letting plaintiff off.

3. ———: ———: ———: ———: Variance. Upon such a petition, however, plaintiff cannot recover by showing that the place where he attempted to alight had, by usage or custom, become a regular stopping place for letting off passengers. To permit this would allow a plaintiff to plead one state of facts and recover by proving another.

4. ———: ———: ———: ———: ———. If the existence of such usage and custom is properly in issue, then it is error to exclude evidence offered by defendant tending to controvert such custom.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

Reversed and remanded.

*John H. Lucas* and *Hogsett & Boyle* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action. Jacobson v. Transit Co., 106 Mo. App. 346; McCarty v. Suburban Ry., 105 Mo. App. 596; Jackson v. Railroad, 118 Mo. 221; Nellis on Street Rys., p. 484; Nichols v. Railroad, 106 Mass. 463; Grabenstein v. Railroad, 84 N. Y. Supp. 261; Mitchell v. Railroad, 61 Mich. 236. (2) The court erred in overruling the motion in arrest of judgment. The defendant was entitled to judgment on the pleadings. Ramp v. Street Railway, 133 Mo. App. 703; Cain v. Wintersteen, 144 Mo. App. 5; Peterson v. Street Railway, 211 Mo. 520. (3) The court erred in refusing the peremptory instruction requested by defendant at the close of all the evidence. Newlin v. Railroad, 103 N. W. 999; Hannestad v. Railroad, 118

N. W. 38; Meinrenken v. Railroad, 80 N. Y. Supp. 1074.

*Guthrie, Gamble & Street* for respondent.

(1) The petition states facts sufficient to constitute a cause of action. Fillingham v. Transit Co., 102 Mo. App. 573; Mason v. Deitering, 132 Mo. App. 35; Fisher v. Central Lead Co., 156 Mo. 485; Ins. Co. v. Trimble, 86 Mo. App. 546. (2) The court properly overruled the motion in arrest of judgment. McCormick v. Clopton, 150 Mo. App. 140; Pidgeon v. United Railways Co., 154 Mo. App. 20; Brewster v. Land & Imp. Co., 247 Mo. 213; Roden v. Helm, 192 Mo. 71; Stevens v. Fitzpatrick, 218 Mo. 708; Turner v. Butler, 126 Mo. 131; Howell v. Reynolds County, 51 Mo. 154.

TRIMBLE, J.—Action to recover damages for personal injuries sustained by plaintiff while in the act of alighting from one of defendant's street cars.

The injury occurred between seven and eight o'clock, p. m. October 12, 1910, at the intersection of Southwest boulevard and Pennsylvania avenue (frequently called Penn street). Southwest boulevard, as its name would indicate, runs southwest and crosses Pennsylvania avenue at an angle of forty-five degrees, Pennsylvania avenue running north and south.

Defendant's two tracks lie in Southwest boulevard, and the car from which plaintiff attempted to alight was on the north track going southwest and was approaching the above-mentioned intersection.

At the date of the injury, all cars of defendant were required to stop at the *far* side of street intersections to let off and take on passengers instead of at the *near* side. So that the regular stopping place, for this purpose, of west bound cars at this intersection was on the *west* side of Pennsylvania avenue.

A post-office substation was located on the southeast side of Southwest boulevard a few feet east of

Pennsylvania avenue, and mail was loaded upon east-bound mail cars in front of this substation. This made it more or less dangerous for westbound cars to pass while mail was thus being loaded, and, at the request of the Post Office Department, the defendant established a "safety stop" on said westbound track. This safety stop was somewhere from twenty to thirty or more feet east of the northeast corner of the two streets, and from eighty to ninety feet northeast of the regular stopping place for the discharge of passengers which, as stated, was on the west side of the avenue for all westbound cars. It was at the safety stop that plaintiff attempted to alight when he got hurt. The jury awarded him $1000, upon which judgment was rendered and from which defendant has appealed.

After alleging that the defendant was a common carrier of passengers for hire, and that plaintiff was a passenger on defendant's car, the petition further alleged that as "said car approached the intersection of Southwest boulevard and Penn street, plaintiff signaled said car to stop for the purpose of alighting, and in response to said signal said car came to a stop, and while plaintiff was in the act of stepping off of said car, the same was suddenly, violently and negligently started forward; and as a direct result of such starting plaintiff was violently precipitated to the pavement" and that "the negligence of the defendant consisted in the defendant carelessly and negligently starting said car while he was in the act of alighting therefrom without allowing him reasonable time to alight from said car."

Defendant's first point is that the petition states no cause of action because it failed to allege either that the place where the car stopped, and where plaintiff attempted to alight, was a regular stopping place for letting off passengers, or that the car crew knew, or by the exercise of due care, should have known,

that plaintiff was alighting at the time the car was started.

The office and purpose of an allegation that the place in question was a regular stopping place is to show that a duty rested on those in charge of the car to know whether passengers were alighting and not to start the car while any were in that act. But an allegation which, in effect, charges that the car stopped *for the purpose of letting off a passenger* shows this duty fully as well as does the allegation that it was at a regular stopping place. And if the car stopped for the purpose of letting a passenger get off, then it would be the duty of those in charge of the car to see that it did not start up until that purpose had been safely accomplished, whether that particular stop was made at the regular place or not. Now the petition alleges that as the car approached the intersection "plaintiff signaled said car to stop for the purpose of alighting, and *in response to said signal* said car came to a stop." Of course this means that plaintiff's purpose in signalling was in order that he might alight, and when it is said that the car came to a stop *"in response to said signal"* this means that the car stopped to allow plaintiff to get off. So that, merely as a pleading, and *without reference to its application to the facts in the case,* the petition did show that, under the facts alleged, a duty rested on the conductor to see that plaintiff had safely alighted before he gave the order for the car to proceed.

But defendant claims that the stop on the east side of Penn street was a mere safety stop, which is only momentary, and that the regular stopping place for the discharge of passengers was on the west side of said street. Hence it may be said that, if plaintiff signaled the car to stop, such signal would be interpreted to mean the stop at the regular stopping place on the far side of the street and not the safety stop on the near side; and if the evidence shows that the

car did not stop *"in response to said signal"* but only made the momentary safety stop because that was required by rule, then the car did not stop for the purpose of allowing plaintiff to alight, and, under such circumstances, no duty would rest on those in charge of the car to find out or learn whether plaintiff was about to alight and, if so, not to start the car until he had succeeded in doing so. In such case defendant would not be liable unless the conductor knew the plaintiff was in the act of alighting. But the evidence for plaintiff does not show that the car stopped *in response to his signal* as alleged in the petition. Plaintiff did not testify to any facts showing that the conductor knew he was intending to get off *at the safety stop.* All of the testimony showed that the conductor was inside the car. (The conductor says he was collecting fares; plaintiff says he does not know what he was doing). The petition says "as the car approached the intersection" plaintiff signaled. Plaintiff testified: "Q. What did you do when you got ready to get off? A. I came to my place to get off and he stopped the car as we were aiming to get off." Even if this be construed to mean that the conductor stopped the car *because* he saw they were wanting off and not *while* they were doing so, still it is no more than a conclusion to that effect, or merely a statement that the conductor stopped the car. Because plaintiff nowhere testifies to facts showing that, if he signaled the conductor, the latter saw it or understood that the signal was to let him off at the safety stop. His counsel asked, "You say you came to the place where you wanted to get off, and you indicated that you wanted to get off? A. Yes, sir. Q. Who did you do that to? A. To the conductor." He was then asked what was the result of that signal, but instead of answering that question he went on to tell something else and nowhere said what effect his signal had on the conductor, or that he saw the signal, or did

anything in response to it. In fact, he was asked, "who spoke to the conductor about stopping—you or Mr. Jackson? A. I did. Q. What did he do? A. I don't remember. Q. Did he ring the bell? A. *I don't remember.* Q. You don't recall hearing it rung? A. *No sir.*" On this same point he was later asked by his counsel, "now when you told the conductor you wanted to get off, *did he signal the motorman? A. I never noticed* for I was working my way through the crowd to get off." As stated before, all the evidence was that the conductor was inside the car, and plaintiff says he (plaintiff) was in the rear vestibule not far from the step, and *doesn't know what the conductor was doing,* but that there was a large crowd in the car. The only other witness for plaintiff, in a position to testify as to whether the conductor knew they wanted off, was Jackson who was also in the vestibule, but he swore he knew nothing about whether the conductor knew they wanted off or not, and the crowd was so thick he could not get off with plaintiff although close behind him. All other evidence was to the effect that the car stopped at the safety stop without any signal as the rule required a stop there, but that it was only a momentary one and that, upon signal from the conductor, the car immediately started up again, also that the conductor got no signal to stop the car, did not stop it, and did not know plaintiff was attempting to get off or that he was thrown and hurt in getting off until he learned of it afterwards. There was, therefore, no evidence to show that the car came to a stop in response to said signal. The petition stated facts which, if true, constituted a cause of action, but the evidence did not support the facts pleaded. According to the petition, the conductor having stopped the car in response to plaintiff's signal, was in duty bound not to start it again while plaintiff was in the act of alighting. The evidence, however, failed to show that he stopped the car on that account. Instead of offer-

ing evidence in support of the fact alleged, plaintiff offered testimony tending to show that it was customary for defendant's cars to let off and take on passengers at the safety stop; in other words, the conductor's breach of duty was shown, not by proving the fact alleged, but by offering proof that, by reason of a custom, the safety stop had also become a regular stop for the discharge of passengers. A judgment obtained in this way cannot be permitted to stand. To permit this would allow a plaintiff to recover by pleading one state of facts and then proving another.

The evidence offered by plaintiff tending to show that the point where he attempted to alight, although a safety stop had, by usage and custom, become a regular stopping place for the discharge of passengers, although unsupported by any allegation in the petition as to the character of the stopping place, was admitted without objection. Without regard to the admissibility of such evidence under the petition as it stands, certainly if the existence of such usage and custom was by the introduction of such evidence brought in issue, then defendant should have been permitted to controvert that issue. But when defendant attempted to do this, plaintiff objected and the objection was sustained, the court remarking that it is a question of what this car did on that occasion." But, on the case as presented by the evidence as contradistinguished from that made by the petition the question was much more than merely what the car *did*. There was no question as to what it did. It stopped. But the all important question was what was the *purpose* of its stopping. Did it stop merely momentarily in accordance with the rule requiring the motorman to stop for an instant, or was it also a regular stop for passengers to alight by reason of a custom to that effect? If by reason of a custom it had become a regular stopping place for the discharge of passengers, then the conductor had no right to signal the

motorman to proceed at once without first making sure that no one on the car was intending to get off, and it was his business to catch and act upon plaintiff's signal and give him reasonable time to alight. But if there was no such custom and the stop was merely a safety stop in which the car stopped only an instant, or sometimes did not stop at all but merely came to a very slow movement, then unless the conductor actually knew some one was in the act of or about to get off, he would not be negligent in ordering the car to proceed. If plaintiff's case is bottomed upon the fact that the point in question was a regular stopping place made so by custom then (aside from the question of pleading), it was error to exclude defendant from showing that there was no such custom.

In holding that it was error to exclude such evidence we do not overlook the fact that the general managers and superintendent of the road were allowed to testify that the regular stopping place was on the west side of Penn street and that the place in question was only a safety stop. But this merely showed what the two steps were established for. It did not show what use was actually made of the stop in question. And plaintiff had offered evidence tending to show that in actual use the safety stop was also a regular place for letting off passengers.

Plaintiff's instruction No. 1 ignored this question of whether the place at which plaintiff attempted to alight was a mere safety stop not intended for passengers or whether, by reason of a custom, it had become a regular passenger stop. The first clause of the instruction said: "The court instructs the jury that it was the defendant's duty to exercise the highest practicable degree of care of persons very skilful in the management of street railways for the reasonable safety of the passengers alighting from its cars, and that defendant's failure to do so, if there was any such

failure, was negligence upon the defendant's part, etc.'' This was not stating an abstract proposition but was dealing with the law as applied to the facts. It told the jury what was negligence in the case. The instruction nowhere required the jury to find that the place had become a regular stopping place for passengers to alight. And the jury could only take the instruction to mean that the conductor owed the duty of very high care to plaintiff as an alighting passenger at that point no matter whether it was a mere safety stop or had become a regular alighting place. In fact, the rest of the instruction goes back to the case as made by the petition and required the jury to find that plaintiff had notified the conductor of his intention to alight and that the car had come to a stop *for that purpose.* But, as we have seen, the evidence of plaintiff did not show that the car came to a stop *in response to plaintiff's signal.*

If the place was a mere safety stop and nothing more, then defendant would not be liable unless the conductor knew, or had reason to know, that a passenger was alighting at the time he ordered the car to start. [Jacobson v. St. Louis Transit Co., 106 Mo. App. 339, 346; McCarty v. St. Louis & Suburban R. Co., 105 Mo. App. 596, 601-2; Nichols v. Middlesex R. Co., 106 Mass. 463; Jackson v. Grand Ave. Ry. Co., 118 Mo. 199, 220-1; Mitchell v. Chicago, etc. R. Co., 51 Mich. 236, 239; Grabenstein v. Met. St. Ry. Co., 84 N. Y. Supp. 261.]

We have carefully studied the evidence and do not agree with defendant that it conclusively shows that plaintiff went to the step and jumped off after the car had started and that the rapid speed of the car was too much for him and threw him down. While some of the evidence may tend to show that he got off at a place some distance from the safety stop and, consequently, long after the car had resumed its usual speed, yet this is largely a conclusion drawn from the

Hays v. Railway Co.

fact that he was picked up at some distance from the stop. And there is evidence to explain this in that he was thrown off his feet by the starting of the car and having hold of the car with his hands he went "tumbling along" until his hold was broken and he fell to the pavement. This would account for his being found at a distance from the stop. Besides, the witnesses, in indicating upon a map the spot where he fell and was picked up, could only do so approximately, and the distance from the stop was too short, and the liability of the witnesses being in error a few feet in their estimation of where he fell is too great, for us to say that he did not attempt to get off until after the car started. The question is one for a jury and their finding thereon either way would have sufficient evidence to support it.

Neither should the judgment be reversed outright because there was no allegation in the petition as to the character of the stop where plaintiff attempted to alight. No attack was made on the petition before verdict and no objection was made to the evidence tending to show that the place had, by usage, become a regular place to discharge passengers. Inasmuch as the evidence tends to show that there may have been a duty resting upon the conductor not to start the car while plaintiff was in the act of alighting (although not by reason of the precise facts alleged in the petition), the cause should be remanded in order that a new trial may be had.

The judgment is, therefore, reversed for the errors noted and the cause remanded. The other judges concur.