MINERVA N. ELLIOT, Respondent, v. UNITED
RAILWAYS COMPANY OF ST. LOUIS, Ap-
pellant.

St. Louis Court of Appeals. Opinion Filed May 6, 1919.

1. STREET RAILROADS: Carriers: Carriers of Passengers: Injury to
Intending Passenger: Prima Facie Case. In an action for personal
injuries sustained while plaintiff was attempting to take passage
upon a street car, evidence *held* to establish a prima facie case in
favor of plaintiff.

2. ———: ———: ———: ———: Negligence. Where a street car
is temporarily stopped at a place other than a regular stopping
place, for some purpose not connected with the matter of receiving
or discharging passengers, and where it is not intended or ex-
pected that passengers will attempt to board the car or alight
therefrom, if a passenger attempts to get on or off of the car and
is injured by the starting thereof, the carrier cannot be charged
with negligence unless the conductor or other person in charge
of the car knows, or has reason to know, that such attempt is
being made.

3. ———: ———: ———: ———: Duty of Employees in Charge of
Car. If a street car was allowed to stand at a point to receive
passengers, and a number of persons, including plaintiff, were
entering, it was the duty of those in charge of the car to ascertain
that all such persons were in a place of safety before starting
the car.

Appeal from the Circuit Court of the City of St.
Louis.—*Hon. Rhodes E. Cave*, Judge.

AFFIRMED.

*T. E. Francis, R. E. Blodgett, Joseph Park* and
*C. H. Clarke* for appellant.

(1) The court erred in refusing to give the in-
struction in the nature of a demurrer to the evidence,
for the reason that the place where plaintiff attempted
to board the car was not a usual or customary stopping
place and there was no showing that the operatives

actually saw her attempting to board the car. A showing of either one of these conditions is a prerequisite to a recovery in a boarding case. McCarty v. Railway Company, 105 Mo. App. 596, 600; Husbands v. Railway Co., 196 S. W. 78, 81; Murphy v. Street Railway Company, 125 Mo. App. 269, 274; Jacobson v. St. Louis Transit Co., 106 Mo. App. 339, 346. Plaintiff's testimony, that she had "frequently taken the second car back," was not sufficient to establish a custom, so as to charge defendant with constructive knowledge that plaintiff was attempting to board the "second car back," since, "to make a custom effective, it must be shown to have been general, uniform, certain and notorious, known to the paries or so general and universal in its character that knowledge must be presumed." McMiens v. United Railways Co., 274 Mo. 326, 331; McCarty v. St. Louis & Suburban Railway Co., 105 Mo. App. 596, 601. (2) Since plaintiff's evidence showed that the car she attempted to board was not at a regular stopping place and the evidence was not sufficient to establish the existence of a custom to invite passengers to board there, plaintiff's instructions Nos. 1 and 2 are erroneous for failing to require a finding by the jury that the operatives of the car actually knew she was attempting to board it. McCarty v. St. Louis & Suburban Railway Company, 105 Mo. App. 596, 600; Husbands v. St. Louis Electric Terminal Railway Co., 196 S. W. 78, 81; Murphy v. Metropolitan Street Railway Company, 125 Mo. App. 269, 274; Jacobson v. St. Louis Transit Co., 106 Mo. App. 339, 346. The failure to hypothetically submit every constituent element of plaintiff's case is reversible error. Delfosse v. United Railways Co., 201 S. W. 860, 862. (3) The court erred in giving plaintiff's instruction No. 1, for the reason it assumed that the car moved, which was a controverted issue in the case. Flannegan 1. Nash, 190 Mo. App. 578, 583; Ganey v. Kansas City, 259 Mo. 654, 663.

*A. R. Taylor* and *Howard Taylor* for respondent.

(1) This case is strictly a case of passenger and carrier, and under the petition and the evidence produced by the plaintiff was rightfully submitted to the jury. (a) The relation of carrier and passenger exists as the result of a contract, either express or implied. Schepers v. Union Depot Ry. Co., 126 Mo. 672; McCarty v. St. Louis & Sub. Ry. Co., 105 Mo. App. 601; Speaks v. Met. St. Ry. Co., 179 Mo. App. 311; Booth on St. Railway Law, section 326; Schaefer v. Railroad, 128 Mo. 64. (b) The act of stopping a street car and receiving passengers thereon, and opening the gate for said purpose, are invitations to would-be passengers to board the car, and are invitations not only to first persons to board the car, but to others who wish to board same. Schepers v. Union Depot Ry. Co., 126 Mo. 665; Barth v. K. C. Elevated Ry. Co., 142 Mo. 549; Devoy v. St. Louis Transit Co., 192 Mo. 210. (c) It is negligence *per se* for street railway employees to start the car forward while a passenger is in act of getting on same. Cobb v. Railroad, 149 Mo. 136; Barth v. Railroad, 142 Mo. 536; Schepers v. Railroad, 126 Mo. 673; Devoy v. Transit Co., 192 Mo. 210; Booth on St. Railways, sec. 326; Clark's Accident Law, sec. 3, pp. 4, 5, 6. (d) The undisputed evidence in this case shows that the place where plaintiff attempted to board car was a customary stopping place, that car was stopped, that the conductor had opened the entrance door to car, that other passengers had boarded car while plaintiff waited to board same, and that she had one foot on step of car when car started up. This makes an actionable case of negligence, and case was properly submitted to jury. Barth v. K. C. Elevated Ry. Co., 142 Mo. 548; Devoy v. St. Louis Transit Co., 192 Mo. 208; Husbands v. St. Louis Electric Ter. Ry. Co., 196 S. W. 81; Hays v. Met. St. Ry. Co., 182 Mo. App. 396. (2) Instructions No. 1 and No. 2 given on part of plaintiff required jury to find that defendant's servants in charge of car in ques-

tion stopped said car for the purpose of receiving passengers, including plaintiff thereon, and therefore did require actual knowledge on part of defendant's servants. (3) Instruction No. 1 for plaintiff does not assume that car moved, but required the jury to so find, which they did by their verdict.

ALLEN, J.—This is an action for personal injuries alleged to have been sustained by plaintiff through the negligence of the defendant while plaintiff was attempting to take passage upon a street car operated by the defendant in the city of St. Louis. The trial, before the court and a jury, resulted in a verdict and judgment for plaintiff in the sum of $3000, and the case is here on defendant's appeal.

The petition, after charging that defendant is a common carrier of passengers for hire by street railway, alleges that on December 26, 1914, the defendant's servants in charge of an eastbound street car on Delmar avenue, stopped the same near and west of the west crossing of Delmar and Hamilton avenues, in the city of St. Louis, for the purpose of receiving persons, including plaintiff, as passengers thereupon; that while the car was so stopped for said purpose, plaintiff proceeded to get upon it as a passenger, the door of the rear platform thereof being open to enable passengers to board the car; and that while plaintiff was in the act of stepping upon the step of the car, for the purpose of entering it and becoming a passenger thereon, and before she had reasonable time and opportunity to do so, defendant's servants in charge of the car negligently caused and permitted it to start into motion, causing the car door to close upon the hand and arm of plaintiff's son, who was in the act of stepping upon the step of the car to become a passenger thereon, whereby plaintiff's son was caused to fall against plaintiff, and ''by the motion of said car and being so struck by her son in his fall, the plaintiff was thrown and caused to fall from said car to the street,'' whereby she was injured, as described in the petition.

The answer is a general denial.

Delmar avenue extends east and west and is intersected by Hamilton avenue, extending north and south. On Delmar avenue the defendant, at the time involved, maintained double car tracks upon which it operated street cars for the conveyance of passengers for hire as a common carrier. Plaintiff testified that she left the Park Theatre, situated on the north side of Delmar avenue, a short distance west of Hamilton avenue, about five o'clock P. M. on December 26, 1914, accompanied by her son, a boy then about eleven years of age; that she went to the southwest of Delmar and Hamilton avenues for the purpose of taking passage on one of defendant's east-bound "Delmar-Olive" cars; that an east-bound car on that line was then standing on Delmar avenue immediately west of the west Hamilton avenue crossing, but that finding this car crowded she and her son, together with "an overflow of passengers" consisting of "about seven or eight, or nine possibly," proceeded west to a car standing in the rear thereof. The testimony shows that the entrance at the rear of this second car was about one hundred forty-five feet west of the west crossing on Hamilton avenue, and that the cars were about forty-five feet in length. Consequently these cars were separated by more than a car length. According to plaintiff's testimony a damaged automobile that had been struck by a west-bound car had been "switched" from the north track to the south or east-bound track, and was then immediately behind the car standing at the crossing.

Plaintiff's testimony is to the effect that this rear car was empty, and that when she and her son went to the rear entrance thereof for the purpose of taking passage thereon, they were preceded by a number of persons, "about seven or eight," who entered the car; that she and her son "stood there a while," waiting for those in front of them to get within the car, and then attempted to enter; she had her left foot upon the

car step and was reaching for the hand-rail, while her son, who was at her right, was trying to assist her, when the car suddenly started forward and the door closed; and that by reason of the movement of the car her son fell against her and she fell to the ground and was injured; that as she fell her son called to the conductor of the car but did not succeed in attracting his attention; that she was unconscious for a short time, and when she recovered consciousness she was at the south curb of Delmar avenue; that two men, Mr. Wyman and Mr. Chapman, then assisted her, took her to a nearby store, and later took her to her home in an automobile. She further testified that she had "frequently taken the second car back and even the third car back during these matinees;" that there was some ice upon the street at the time, but that it was "ice and dirt ground up together—was more like mud."

One Parker, janitor of a building at the southwest corner of Delmar and Hamilton avenues, testified that upon the occasion in question he "saw a lady in a falling attitude;" that he "got a glance of a woman falling;" but that his attention was attracted elsewhere and he paid no further attention to the matter. He further testified: "The regular stopping place is almost immediately in front of my Delmar entrance, a little to the east, and at the time I remember, which is customary on matinee days especially, or sometimes the crowd wants the car and another car comes up behind and at that time it was the case, and it was the rear car upon which I saw the lady in the falling attitude. I don't want to say I saw her falling from the car. I just got a kind of angle glance at her."

The testimony of plaintiff's son closely corroborates that of plaintiff. He said: "Well, we walked back with some other people; we all walked back to this car. . . . We all started to get on. We waited a second for the people to get on, and after they got on I took hold of the hand-rail with my right hand, and I had my left hand on my mother's right arm, and as I was boosting her up the car started into motion, broke

my hold, and I fell against my mother and knocked her to the ground." He testified that his mother had had one foot upon the car step, when the car started forward; that after she fell he called to the conductor but the latter "didn't pay any attention;" that thereupon he caught his mother beneath her arms and dragged her over to the south curb of the street.

This, in substance, is the testimony in chief for plaintiff, aside from that bearing alone upon the extent of her injuries, a matter not involved upon the appeal.

Wyman, called as defendant's witness, testified that when he and his companion, Chapman, went to plaintiff's assistance, she told him that she had slipped and fallen on the ice, and said nothing "about having fallen from a street car." On cross-examination he said that he did not remember "directly" that plaintiff said that she slipped on the ice; but later said that she told him this, saying that she fell at the gutter.

The witness Chapman testified that plaintiff told him that she "slipped and fell," and that he drew the inference that she slipped on the ice.

Further testimony for defendant tends to show that the automobile mentioned in the testimony for plaintiff was struck about five o'clock by a west-bound car and slightly damaged; that it was moved from the west-bound track to the north side of the street, and was never pushed south across the east-bound track.

Defendant put on as witnesses fourteen conductors shown by testimony for defendant to have been all of its conductors "who operated that day between the hours of 4:45 and 5:20," on this car line. Each testified that no one fell while attempting to board his car that afternoon at the place mentioned.

In rebuttal plaintiff denied that she made the statements attributed to her by the witnesses Wyman and Chapman.

It is earnestly insisted by learned counsel for appellant that the court below erred in refusing to peremptorily direct a verdict for defendant. This assignment of error proceeds upon the theory that

since plaintiff undertook to board this car at a place other than a regular stopping place for receiving and discharging passengers, it devolved upon her to show that defendant's servants in charge of its car actually knew that she was attempting to board it at the time of her injury; and that plaintiff failed to adduce such proof.

In this connection it is argued that the evidence fell far short of showing a custom on the part of defendant to stop its cars, for receiving passengers, at the place where plaintiff attempted to board this car upon "matinee days" or at any other time. But it is unnecessary to consider this question, or to discuss the authorities cited in this connection. We are of the opinion that, in any event, the evidence for plaintiff, when viewed in the light most favorable to her, giving her the benefit of the reasonable inferences that may be fairly drawn therefrom, establishes a prima-facie case in her favor.

It is true that where a car is temporarily stopped at a place other than a regular stopping place, for some purpose not connected with the matter of receiving or discharging passengers, and where it is not intended or expected that passengers will attempt to board the car or alight therefrom, if a passenger attempts to get on or off of the car and is injured by the starting thereof, the carrier cannot be charged with negligence unless the conductor or other person in charge of the car knows, or has reason to know, that such attempt is being made. [See McCarty v. St. Louis & Suburban R Co., 105 Mo. App. 596, 80 S. W. 7; Jacobson v. St. Louis Transit Co., 106 Mo. App. 339, 80 S. W. 309; Hays v. Met. St. Ry. Co., 182 Mo. App. 393, 170 S. W. 414; Husbands v. St. Louis Electric Terminal Ry. Co., 196 S. W. 78.] In the instant case, however, we think that the testimony for plaintiff supports the inference that the car was stopped and was being held at the place in question for the purpose of receiving passengers, including plaintiff, thereon. This testimony tends to show that plaintiff

and her son were with a number of other persons, about eight or nine, and that the entire crowd walked west to this car to take passage thereon; that when they approached it the car was empty and *the conductor had the door open.* It appears that plaintiff and her son were immediately behind all or nearly all of the persons mentioned, that they waited a brief interval in order to allow those preceding them' to get upon the car, and that about seven or eight persons actually entered the car. The evidence showing that this empty car was standing in the position mentioned, and under the circumstances shown in evidence, with the door open as an implied invitation to enter, and that a crowd of passengers was streaming into it, seven or eight of whom entered within it, warrants the inference that the car was there for the purpose of receiving passengers. And if the car was stopped and allowed to remain there for that purpose, it was the duty of those in charge thereof not to start it forward until all of the persons thus seeking to enter it had been afforded an opportunity to safely get aboard.

It is immaterial, under the circumstances, whether or not the conductor actually saw plaintiff at the time of her fall. If the car was allowed to stand there for the purpose of receiving passengers; and a number of persons, including plaintiff, were entering it, it was the duty of those in charge thereof to ascertain that all such persons were in a place of safety before allowing the car to move forward.

In Hays v. Metropolitan Street Railway Co., supra, l. c. 397, it is said.

"The office and purpose of an allegation that the place in question was a regular stopping place is to show that a duty rested on those in charge of the car to know whether passengers were alighting and not to start the car while any were in that act. But an allegation which, in effect, charges that the car stopped for the purpose of letting off a passenger shows this duty fully as well as does the allegation that it was at a regular stopping place. And if the car stopped for the pur-

pose of letting a passenger get off, then it would be the duty of those in charge of the car to see that it did not start up until that purpose had been safely accomplished, whether that particular stop was made at the regular place or not.''

The principle thus invoked is equally applicable to an allegation that a car was stopped for the purpose of receiving passengers thereon. Such is the allegation of this petition; and the proof, we think, tends to sustain it.

The testimony relating to the damaged automobile is not of consequence in the case; it does not appear that this car from which plaintiff is said to have fallen stopped in the position mentioned because of the presence of the automobile upon the east-bound track, if it was temporarily thereupon. And, of course, the testimony of the witnesses Wyman and Chapman is not of influence in passing upon the demurrer to the evidence, but was a matter for the consideration of the jury.

We consequently hold that the court did not err in refusing to direct a verdict for defendant.

Complaint is made of instructions No. 1 and No. 2 given at plaintiff's request, upon the ground that they failed to find that those in charge of the car knew that plaintiff was attempting to get upon it. The instructions, however, required the jury to find that the car was stopped for the purpose of receiving passengers thereon, which, for the reasons noted above, was sufficient.

It is further argued that plaintiff's instruction No. 1 assumed that ''by said collision (the falling of plaintiff's son against her) and said motion of said car plaintiff was thrown from said car;'' but it is apparent, from an inspection of the instruction, that the matter mentioned is included among the things which the instruction required the jury to find in order to return a verdict for plaintiff. In this respect the instruction

is quite unlike that condemned in Flannigan v. Nash, 190 Mo. App. 578, 176 S. W. 248, cited by appellant.

It follows that the judgment should be affirmed, and it is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.